UNITED STATES of America

v.

Neil Maury HIRSCH, Defendant.

No. 73–CR–806.

United States District Court,
E. D. New York.

Oct. 20, 1977.

David G. Trager, U.S. Atty., E.D.N.Y., Brooklyn, N.Y., for United States; Elaine C. Buck, Asst. U.S. Atty. Brooklyn, N.Y., of counsel.

Frederick H. Cohn, American Civil Liberties Union, New York City, for defendant; Edwin J. Oppenheimer, Jr., New York City, of counsel.

BARTELS, District Judge.

In September, 1973, a two-count indictment was handed down charging Neil Maury Hirsch with failure to comply with the Military Selective Service Act. Hirsch was not taken into custody at the time of his indictment and on October 2, 1973, a bench warrant was issued for his arrest. In September, 1974, Presidential Proclamation 4313, [1974] U.S. Code Cong. & Admin. News 8216, was issued, establishing a clemency program for Vietnam era draft evaders. Hirsch, who had become a fugitive in

1973, remained at large until March, 1975, when he surrendered to the office of the United States Attorney.

Prosecution of the charges against Hirsch was deferred to allow him to enter the clemency program established by Presidential Proclamation 4313. Upon defendant's satisfactory completion of twelve months of alternate service in the clemency program, the United States Attorney appeared before this court and moved that the charges against Hirsch be dismissed. On July 26, 1976, this court granted the Government's motion and dismissed the draft evasion charges against Hirsch. The defendant now moves to have the record of his indictment sealed, and to have the fingerprints, photographs and biographic information taken at the time of his surrender returned to him by the Government. The records he seeks to have expunged are maintained pursuant to 28 U.S.C. § 534(a), which requires the Attorney General to "acquire, collect, classify, and preserve identification, criminal identification, crime, and other records."

It is clear that the power to grant an order of the type sought by the defendant lies within the equitable discretion of this court. *United States v. Bohr,* 406 F.Supp. 1218, 1219 (E.D.Wis.1976); *Urban v. Breier,* 401 F.Supp. 706, 713 (E.D.Wis. 1975); *United States v. Seasholtz,* 376 F.Supp. 1288, 1289 (N.D.Okl.1974); *United States v. Dooley,* 364 F.Supp. 75, 77 (E.D. Pa.1975); *United States v. Rosen,* 343 F.Supp. 804 (S.D.N.Y.1972). It is equally clear, however, that that power is not one to be exercised in the normal case. *Bohr, supra,* at 1219; *Breier, supra,* at 713; *Seasholtz, supra,* at 1289; *Dooley, supra,* at 78; and *Rosen, supra,* at 806–807. Rather, discretion calls for granting such relief only under certain extraordinary circumstances. Examining the facts of this case, we find no such circumstances and must therefore deny defendant's motion.

Defendant argues in support of his motion that this court's discretionary power should be exercised because the mere retention of his criminal record constitutes an invasion of his constitutional right of privacy. A number of courts have considered the question of whether the maintenance of such records is *per se* a violation of constitutional rights. These courts have held that even where charges were dismissed, *Seasholtz, supra,* at 1289, or a defendant was acquitted, *United States v. Linn,* 513 F.2d 925 (10th Cir.), *cert. denied,* 423 U.S. 836, 96 S.Ct. 63, 46 L.Ed.2d 55 (1975); *Dooley, supra,* at 77; *Rosen, supra,* at 809, or had his conviction reversed, *Rogers v. Slaughter,* 469 F.2d 1084 (5th Cir. 1972), an individual's privacy interests do not require expunction of such records.

Courts have been willing to order expunction when the records in question were the product of illegal or improper government conduct, *Bilick v. Dudley,* 356 F.Supp. 945 (S.D.N.Y.1973), especially where future misuse of such records is likely, *Breier, supra,* 401 F.Supp. at 713; *Linn, supra,* 513 F.2d at 928. In the present case, however, the defendant has neither alleged nor proven that his criminal record is the product of illegal or improper government activity or that this record is likely to be misused in any manner which would constitute an invasion of his privacy. The defendant has offered no evidence to indicate that his privacy interests will be insufficiently protected by 28 U.S.C. § 534(b), which provides for terminating the intergovernmental exchange of criminal records in cases of misuse or improper dissemination.

Defendant, in support of his position, cites *United States v. Kalish,* 271 F.Supp. 968 (D.P.R.1967), which sealed the criminal record of a violator of the Selective Service Act. The court's exercise of its discretion, however, was based on facts which differ from those of this case in several critical respects. The defendant in *Kalish* not only appeared for induction but never became a fugitive and actually served in the armed forces after proceeding through an orderly legal challenge to his induction. Under those circumstances, the court concluded that no legitimate law enforcement purpose would be served by maintaining those records and thus ordered them sealed. While these are obviously not the facts of the

instant case, Hirsch suggests that there are other facts in this case which justify a comparable result.

First among these is the fact that if the charges against Hirsch had not been dismissed and he had instead proceeded to trial and even conviction, under the Federal Youth Corrections Act, 18 U.S.C. §§ 5005 *et seq.*, he would have been eligible to have his record sealed pursuant to 28 U.S.C. § 5021. *United States v. Glasgow*, 389 F.Supp. 217 (D.D.C.1975). This argument is predicated upon the assumption that the court would have sentenced Hirsch under the Youth Corrections Act and further, that he would have been sentenced to the custody of the Attorney General for treatment. There is no basis for this assumption. Hirsch, however, did not choose to proceed to trial and instead became a fugitive and finally opted for participation in the program established by Presidential Proclamation 4313. By so choosing, he removed himself from the risks of military service and of trial and sentence. He cannot now take advantage of the statutory provisions of the Youth Corrections Act, without having been sentenced thereunder. *See, Glasgow, supra.* Thus the relevant factor guiding this court's exercise of discretion is not the Youth Corrections Act but is instead the Presidential Proclamation of clemency.

The proper interpretation of that Proclamation is suggested by *Tatum v. United States*, 114 U.S.App.D.C. 49, 310 F.2d 854 (1962). There the court observed:

> The provision of the Federal Youth Corrections Act, 18 U.S.C. § 5021 (1958), appears to provide greater relief then would a presidential pardon of the same offense. The former acts to expunge the conviction and the record while the latter "released the offender from all disabilities imposed by the offense, and restores to him all his civil rights." *Knote v. United States*, 95 U.S. 149, 153, 24 L.Ed. 442 (1877). *Id.* 114 U.S.App.D.C. at 51, 310 F.2d at 856, n. 2.

Nothing in the language of the Proclamation indicates that it should be given any different effect than that discussed in *Ta-*

*tum*, for presidential pardons in general. The Proclamation does not call for the expunction of the criminal records of those who participate in the clemency program, nor is the maintenance of such records a "disability" of the type which presidential pardons eliminate. *See, Bjerkan v. United States*, 529 F.2d 125, 126–127 (7th Cir. 1975). In fact, in view of the thousands of young men in Hirsch's position who were killed or wounded in the Vietnam war or who faced trial and sentence, Hirsch is very fortunate to have clemency extended to him without seeking more.

Motion denied. SO ORDERED.