**UNITED STATES of America,**

v.

**John DOE, Defendant.**

**Nos. 76 Cr. 935 (WCC),
76 Cr. 936 (EW).**

United States District Court,
S.D. New York.

Aug. 29, 1996.

---

Mary Jo White, United States Attorney for the Southern District of New York by Maria P. Horn, Assistant U.S. Attorney, New York City, for United States of America.

Maria B. Hartofilis, Astoria, New York, for Defendant.

### MEMORANDUM DECISION and ORDER

CHIN, District Judge.

Defendant John Doe [1] seeks an order sealing and expunging his criminal record in the above-captioned matter. The government opposes this application. Because I find that defendant has demonstrated "extreme circumstances" warranting expunction, his motion is granted.

### BACKGROUND

On October 14, 1976, defendant pleaded guilty to three counts of making false claims

---

1. Although defendant did not request it, I will use a pseudonym, because the purpose of this expunction order would otherwise be defeated.

to the Social Security Administration and one count of mail fraud, contained in Indictment 76 Cr. 935, before the Honorable Edward Weinfeld. On October 26, 1976, defendant pleaded guilty to one count of making false claims to the Social Security Administration, contained in Indictment 76 Cr. 936, before the Honorable William C. Connor.

On November 12, 1976, Judge Weinfeld sentenced defendant to a term of imprisonment of two years on each indictment, with the terms to run concurrently. Execution of all but four months of the sentence, however, was suspended. Judge Weinfeld also imposed two years of probation. Importantly, Judge Weinfeld provided that defendant was sentenced as a youthful offender "so as to make provisions of § 5021(b) of T[itle] 18, United States Code, applicable to him."

On August 19, 1978, Judge Weinfeld discharged defendant from probation before the maximum period of probation had expired. Accordingly, he ordered that "the judgment of conviction entered by this Court on November 12, 1976 ... has been set aside pursuant to the provisions of Section 5021(b), Title 18, U.S.Code."

Defendant evidently learned a lesson from his youthful indiscretions. Throughout the 1980s, defendant educated himself in computer programming, eventually obtaining employment at a software company. There, he wrote computer applications for major companies such as Estee Lauder, Entemann's and AT & T. In 1993, defendant started his own computer consulting business.

In 1995, defendant obtained a position as a Computer Programmer/Systems Analyst for Chemical Bank. In connection with this position, Chemical Bank obtained defendant's fingerprints and conducted a background check. In March 1996, the background check uncovered defendant's 1976 conviction. Although defendant was at first told not to return to work, Chemical Bank later allowed defendant to complete his current employment contract, which will expire in September 1996. Nevertheless, defendant will likely not be given another employment contract with Chemical Bank because of his prior conviction. Thus, he fears that his 20 year-old conviction will prevent him from obtaining other job opportunities. This motion followed.

## DISCUSSION

■■■ Pursuant to 28 U.S.C. § 534(a)(1), the Attorney General of the United States is required to acquire, retain, and disseminate criminal records. Nevertheless, courts may order the expunction of criminal records through the exercise of their inherent equitable power. See, e.g., United States v. Rabadi, 889 F.Supp. 757, 759 (S.D.N.Y.1995). This power to expunge arrest and conviction records "lies within the equitable discretion of the court." United States v. Schnitzer, 567 F.2d 536, 539 (2d Cir.1977), cert. denied, 435 U.S. 907, 98 S.Ct. 1456, 55 L.Ed.2d 499 (1978). But see United States v. Janik, 10 F.3d 470, 472 (7th Cir.1993) ("federal courts are without jurisdiction to order an Executive Branch agency to expunge what are admittedly accurate records of a person's indictment and conviction"). In exercising their discretion, courts must balance "'the right of privacy of the individual and the right of law enforcement officials to perform their necessary duties.'" Schnitzer, 567 F.2d at 539 (quoting United States v. Rosen, 343 F.Supp. 804, 806 (S.D.N.Y.1972)).

■■ This standard is extremely stringent. Courts have recognized that their equitable power to expunge is a narrow one, which should be exercised only in "extreme circumstances." See, e.g., United States v. Smith, 940 F.2d 395, 396 (9th Cir.1991); United States v. Noonan, 906 F.2d 952, 957 (3d Cir.1990); Schnitzer, 567 F.2d at 539–40. Indeed, "[i]n the face of the public's compelling need to have an accurate criminal identification system, courts have rarely granted motions to expunge arrest records, let alone conviction records." United States v. Sherman, 782 F.Supp. 866, 868 (S.D.N.Y.1991).

■■ Despite this rigorous standard, defendant has demonstrated that this case presents extreme circumstances that, in combination, warrant expunction. First, defendant's conviction occurred twenty years ago. Since that time, he has not had any incidents with the law and has been gainfully employed as a computer programmer. Second, unlike simi-

lar cases where courts have refused to expunge records of conviction, defendant has demonstrated that this ancient conviction has had an actual impact on his employment status. Defendant was initially suspended from work and only was allowed to return based on his excellent work record. Nevertheless, this incident constitutes evidence that he may not be able to continue finding employment. *Cf. Sherman,* 782 F.Supp. at 870 ("Sherman has not submitted any evidence to support his contention that his conviction has restricted or will restrict his future career advancement").

■ Third, and most important, defendant was convicted under the Youth Corrections Act, 18 U.S.C. § 5005 et seq. (repealed) (the "Act") *and* his conviction has been set aside. Under the Act, if a person convicted as a youthful offender was unconditionally discharged before the expiration of the maximum sentence imposed, the conviction had to be set aside. The "clear purpose" for setting aside a youthful offender's conviction was "to relieve him not only of the usual disabilities of a criminal conviction, but also to give him a second chance free of a record tainted by such a conviction." *Mestre Morera v. United States Immigration and Naturalization Serv.,* 462 F.2d 1030, 1032 (3d Cir.1972). Without expunction, Judge Weinfeld's decision to set aside defendant's conviction would be rendered essentially meaningless.

Some courts have held that a set-aside under 18 U.S.C. § 5021(b) requires expunction of a conviction. For example, in an exhaustive opinion balancing both the interests of rehabilitated youthful offenders under the Act and the needs of law enforcement agencies in maintaining criminal records, the D.C. Circuit held that expunction of conviction records was proper. *Doe v. Webster,* 606 F.2d 1226, 1243–45 (D.C.Cir.1979); *see also United States v. Doe,* 496 F.Supp. 650, 652–53 (D.R.I.1980) (adopting the conclusion from *Webster* that the Act authorizes expunction of the conviction records). Moreover, the court held that the FBI would have to "respond in the negative to any and all inquiries concerning the set-aside conviction" and that the ex-offender whose conviction has been set aside "may legally reply in the negative to any and all questions concerning his former conviction." *Webster,* 606 F.2d at 1244. Conversely, other courts, including one in the Southern District of New York, have held that § 5021(b) permits, but does not require, expunction. *United States v. Doe,* 556 F.2d 391, 393 (6th Cir.1977); *United States v. McMains,* 540 F.2d 387, 389 (8th Cir.1976); *United States v. Hall,* 452 F.Supp. 1008, 1012–13 (S.D.N.Y.1977).

Under all the circumstances of in this case, I need not determine whether the set-aside provision of the Act requires expunction. I find that the combination of factors at issue presents an extreme circumstance warranting expunction of defendant's conviction records in this action. Indeed, if this case does not present "extreme circumstances" it is difficult to imagine one that would.

■ The issue remains as to what is meant by "expunction." One possibility is simply to order that the records be destroyed. That remedy, however, is too drastic in light of the government's legitimate interest in preserving criminal records. The better solution is the one proposed by the D.C. Circuit in *Webster.* In *Webster,* the court defined "set aside" as physically removed from central criminal files and placed in a separate storage facility. Thus, the ex-offender need not fear that the records will be accidently released. On the other hand, should the government commence a bona fide criminal investigation concerning the ex-offender, which could be aided by reference to the youthful offender conviction, it could obtain the file. This solution is simply the most equitable under the circumstances.

## CONCLUSION

For the foregoing reasons, defendant's motion to expunge his criminal record in the above-captioned matter is granted. It is hereby ORDERED that the conviction records in the above-captioned action shall be placed in a separate storage facility. It is further ORDERED that these records are not to be opened other than in the course of a bona fide criminal investigation by law enforcement authorities and only when necessary for such an investigation. These rec-

ords may not be used by the government or any of its agents for any other purpose, nor may their contents be disseminated to anyone, public or private, for any other purpose. Finally, it is further ORDERED that in the event the government receives any inquiries about defendant's conviction record, it shall not respond in the affirmative on the basis of the set-aside conviction.

SO ORDERED.