**John DOE,[1] Plaintiff,**

**v.**

**UNITED STATES, Defendant.**

**No. Civ. 97–0106 B(POR).**

United States District Court,
S.D. California.

April 30, 1997.

**1.** For publication purposes, John Doe has been substituted for plaintiff's real name.

Nagmeh Bashar, San Diego, CA, for Plaintiff.

Nita Stormes, Assistant U.S. Attorney, San Diego, CA, for Defendant.

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT; ORDERING DEFENDANT TO SHOW CAUSE WHY AN EXPUNCTION SHOULD NOT BE GRANTED**

BREWSTER, District Judge.

This is an action for equitable relief to expunge Plaintiff's criminal arrest record. The Court has jurisdiction under 28 U.S.C. § 1331. The defendant filed a motion to dismiss, or in the alternative for summary judgment. After due consideration of the papers filed by both parties, the Court hereby DENIES Defendant's motions to dismiss and for summary judgment and orders the

Defendant to show cause why an expunction should not be granted. This matter is set for hearing on Monday, May 5, 1997 at 10:30 a.m.

## I. BACKGROUND

On November 1, 1970, the plaintiff, John Doe ("Doe"), then a minor, was arrested and charged for failure to pay a special tax on imported marijuana in violation of 26 U.S.C. § 4755(a)(1) (repealed). Doe pled guilty and the court ordered him to the custody of the Attorney General as a youthful offender under the Federal Youth Corrections Act ("FYCA"), 18 U.S.C. § 5010(e) (repealed). Doe was sentenced to three years probation.

Prior to the expiration of the three-year probation period, the court issued an order terminating Doe's probation. In 1973, a certification of vacation of conviction was filed and Doe's file was ordered sealed. Since that time, Doe has been neither arrested nor convicted of any crime.

Doe has worked for approximately 20 years in the auto sales industry. He worked his way up from car sales to finance and sales management. Because his career working in car dealerships demanded that he work 60 to 80 hours per week with little tolerance for family needs, after the birth of his third child and upon discovering that his oldest child suffered from Attention Deficit Disorder, Doe sought employment with a company that would allow him to spend more time with his wife and children. Having specialized in finance for the majority of his 20 years in the auto industry, Doe sought employment with a lender specializing in automobile finance. In December of 1995, he found a position with WFS Financial Inc. as a sales manager, bypassing the collections, servicing, and credit officer levels. Doe claims that, in most statistical categories, he leads in sales productivity within WFS Financial nationwide.

His progress with WFS, however, came to a halt when a routine FBI background check revealed his juvenile delinquency conviction. Federal law prohibits any person convicted of a crime involving dishonesty from working for a federally insured financial institution. 12 U.S.C. § 1829. Pursuant to that law, WFS has a policy to terminate all employees with any prior criminal conviction. After discussing the conviction with his supervisor, WFS agreed to reinstate Doe as long as he sought and received an expunction of his criminal record. WFS told him that if he does not receive an expunction, it will terminate his employment. On April 14, 1997, WFS placed Doe on indefinite leave pending the outcome of this matter.

Pursuant to his employer's request, on October 1, 1996, Doe file an *ex parte* motion, bearing the original criminal case number, to expunge the record of his November 1, 1970 arrest and conviction. The court declined to entertain the motion because the case had been long terminated. The court advised Doe that he should file a new civil action seeking declaratory or injunctive relief On January 22, 1997, Doe filed the instant action naming the United States as the defendant and seeking the following relief:

(1) a declaration that Doe's arrest record and booking be expunged;

(2) the fingerprints, photographs, and palmprints taken during and following his arrest be returned to him;

(3) that the Clerk of Court destroy the records filed in his criminal case; and

(4) that his arrest on November 1, 1970 be deemed a nullity and that he be restored in contemplation of the law, to the status he occupied before the arrest.

The defendant now moves this Court to dismiss the case for lack of subject matter jurisdiction, or in the alternative for summary judgment.

## II. DISCUSSION

### A. Standard of Law: 12(b)(1) Motion to Dismiss

Under Rule 12(b)(1), a defendant may seek to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R.Civ.P. 12(b)(1). When considering a 12(b)(1) motion to dismiss, the district court "is free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary." *Augustine v. United States,* 704 F.2d 1074,

1077 (9th Cir.1983). "In such circumstances, '[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Id.* (quoting *Thornhill Publishing Co. v. General Telephone & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir.1979)). Plaintiffs, as the party seeking to invoke jurisdiction, have the burden of establishing that jurisdiction exists. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 376–78, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994).

## B. Defendant's Motion to Dismiss

■ Although the Ninth Circuit has left open the question of whether federal courts have the inherent power to grant the relief sought by the plaintiff in this case, a majority of the circuits agree that federal courts have an "inherent equitable power" to order the expunction of criminal records under certain circumstances. *See United States v. Schnitzer*, 567 F.2d 536, 539 (2d Cir.1977), *cert. denied*, 435 U.S. 907, 98 S.Ct. 1456, 55 L.Ed.2d 499 (1978); *Woodall v. Pettibone*, 465 F.2d 49, 52–53 (4th Cir.1972), *cert. denied*, 413 U.S. 922, 93 S.Ct. 3054, 37 L.Ed.2d 1044 (1973); *Rogers v. Slaughter*, 469 F.2d 1084, 1085 (5th Cir.1972); *United States v. Doe*, 556 F.2d 391, 393 (6th Cir.1977); *Geary v. United States*, 901 F.2d 679 (8th Cir.1990); *Bromley v. Crisp*, 561 F.2d 1351, 1364 (10th Cir.1977), *cert. denied*, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 499 (1978); *Livingston v. United States Dep't of Justice*, 759 F.2d 74, 78 (D.C.Cir.1985); *but see United States v. Janik*, 10 F.3d 470, 472 (7th Cir.1993) ("federal courts are without jurisdiction to order an Executive Branch agency to expunge what are admittedly accurate records of a person's indictment and conviction"). The Defendant concedes that the Ninth Circuit has heard expunction cases under the assumption that the power exists without ultimately resolving the issue. *See United States v. Smith*, 940 F.2d 395, 396 (9th Cir.

1991) (assuming, without deciding, that district courts have power to expunge criminal records). This power is "premised on 'the natural law of remedies' which 'does not set arbitrary limits on a federal court's jurisdiction to right wrongs cognizable by the common law within the jurisdiction of the court.'" *United States v. Smith*, 745 F.Supp. 1553, 1555 (C.D.Cal.1990) (quoting *Natwig v. Webster*, 562 F.Supp. 225, 228 (D.R.I.1933)) (quoting *United States v. Benlizar*, 459 F.Supp. 614, 623 (D.D.C.1978)), *vacated on other grounds*, 940 F.2d 395 (9th Cir.1991). There are circumstances under which unusually substantial harm to one's basic rights, such as the right to seek and obtain employment, can occur that is not in any way attributable to him or her. *United States v. Van Wagner*, 746 F.Supp. 619, 620 (E.D.Va.1990) (citing *Doe v. Webster*, 606 F.2d 1226, 1231 (D.C.Cir.1979); *Bromley*, 561 F.2d at 1364; *Pettibone*, 465 F.2d at 52–53). Under such circumstances, equity cannot be achieved absent an expunction of criminal records.

The Defendant argues that the Court lacks subject matter jurisdiction because there is no statutory waiver of sovereign immunity that permits this expunction action against the United States.[2] Specifically, defendant asserts that jurisdiction cannot be found in 28 U.S.C. §§ 1331, 1346, 2201, 18 U.S.C. § 3607, or the FYCA. The Defendant does not argue that the Court does not have the power to grant an expunction, but rather that the U.S. is not the proper party to sue. The underlying criminal case was closed because it was old, yet the fact that Doe's conviction is so old is what makes his request for expunction so compelling. Had the criminal case been left open, Doe could have made a motion for expunction and the argument Defendant now raises would not apply. Therefore, in the interest of equity, the Court finds that it has jurisdiction to hear this action for expunction and analyzes the case on the merits pursuant to Defendant's motion for summary judgment.

---

2. If the United States is an improper defendant, it is unclear who the proper defendant would be. On October 18, 1996, Judge Huff ordered Plaintiff to file a new case for equitable relief, denying to decide his ex parte motion because the criminal case had been closed. The order specifically states that the Plaintiff is to serve the United States Attorney. There is no authority which specifies who is the proper defendant in a case such as this one.

## C. Standard of Law: Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." One of the principal purposes of the rule is to dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986).

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. If the moving party does not bear the burden of proof at trial, he may discharge his burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. at 2554. The moving party is not required to produce evidence showing the absence of a genuine issue of material fact on such issues, nor must the moving party support its motion with evidence negating the non-moving party's claim. *Lujan v. National Wildlife Federation,* 497 U.S. 871, 885, 110 S.Ct. 3177, 3187, 111 L.Ed.2d 695 (1990). Instead, "the motion may, and should, be granted so long as whatever is before the District Court demonstrates that the standard for the entry of judgment, as set forth in Rule 56(c), is satisfied." *Lujan,* 497 U.S. at 885, 110 S.Ct. at 3187 (quoting *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53).

Once the moving party demonstrates that either no genuine issue of material fact remains or that there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion, who "must set forth specific facts show-ing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his pleadings." *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511.

## D. Defendant's Motion for Summary Judgment

 Expunction of criminal records may be granted where there is a constitutional violation, the records are inaccurate, or other unusual or extraordinary circumstances exist. *See Geary v. United States,* 901 F.2d 679 (8th Cir.1990); *United States v. McLeod,* 385 F.2d 734, 750 (5th Cir.1967). Doe does not assert a constitutional violation or that the records are inaccurate. Therefore, the only issue is whether Doe can demonstrate that extraordinary circumstances exist which justify an order granting expunction. In determining whether extraordinary circumstances exist, the Court should weigh the interest of the government in maintaining the individual's criminal record and the harm caused to the individual by the existence of such records. *See Hobson v. Wilson,* 737 F.2d 1, 65 (D.C.Cir.1984), *cert. denied, Brennan v. Hobson,* 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985). Where the harm outweighs the government interest, it is within the Court's discretion to find that extraordinary circumstances exist which warrant an expunction. *Id.*

### 1. Government Interest in Maintaining Doe's Criminal Record

The government has failed to establish that it has any interest in maintaining Doe's criminal record. Doe pled guilty to a crime that he committed over twenty-five years ago in violation of a statute that has long since been repealed. Doe has had no trouble with the law in the intervening twenty-seven years. Moreover, he committed the crime as a minor and was sentenced under the FYCA. Finally, the sentencing judge vacated his

conviction and ordered his record sealed, leading Doe to believe that his record would have no lasting effect on his attempt to seek future employment. Therefore, an expunction would not affect the accuracy of the government's criminal records because, for all practical purposes, the record is obsolete.[3]

## 2. Harm to Doe

While the government has no interest in maintaining a record of Doe's crime, the potential harm to him if expunction is denied is great. Doe has a family of five to support. If his record is not expunged, he will lose his job with WFS; a job for which he is qualified and at which he excels. Further, if he were to seek employment at any financial institution, even one which is not federally insured, they would inquire about his leaving WFS and the circumstances surrounding his termination. At that point, Doe would be forced to disclose the fact that he has an arrest record. Moreover, Doe was a minor when he committed the crime and his conviction was vacated, making its probative value extremely low.

At least one other court has granted expunction under these circumstances. In *United States v. Doe*, 935 F.Supp. 478 (S.D.N.Y.1996), the court granted an expunction where the petitioner alleged his employment was affected by his criminal record. The court reasoned that the fact that the conviction occurred over twenty years ago, that the individual had no incidents with the law since, and that since his conviction he had been gainfully employed, justified expunging the conviction. *Id.* at 480. The court also emphasized that the petitioner in that case "demonstrated that this ancient conviction has had an actual impact on his employment status" *Id.; see also National Treasury Employees Union v. Internal Revenue Service*, 601 F.Supp. 1268 (D.D.C.1985) (holding that expunction was proper where the records substantially harmed the individual in his efforts to secure employment). The court recognized that the fact that peti-

tioner was initially suspended and later reinstated because of his excellent work performance was evidence that he might not be able to continue finding employment if his record were not expunged. *Doe*, 935 F.Supp. at 480. Finally, and most importantly to the court, the petitioner was convicted under the Federal Youth Corrections Act ("FYCA"), 18 U.S.C. § 5005, and his conviction had been previously set aside. *Id.* The court explained that the purpose of setting aside the conviction was to relieve individuals of the usual consequences of a criminal conviction and to give them a second chance free of a record tainted by a conviction. *Id.* at 481. Without expunction, the court noted, the set-aside would be meaningless. *Id.*

The instant case is analogous to the New York *Doe* case. The present Doe's guilty plea was over twenty-five years ago, and he has had no problems with the law since. Doe has also been gainfully employed for the last twenty years. Moreover, Doe has demonstrated that his record has had an actual effect on his employment in that his employer suspended him indefinitely pending the outcome of this lawsuit. WFS has made it clear that if the Court does not expunge his record, he will be discharged, and if the Court expunges his record, he can resume his employment. Most importantly, Doe's conviction under the FYCA was "set-aside" in that it was vacated and ordered sealed by the judge. Additionally, Doe states in his declaration that the judge told him that after seven years he was not required to report his record to anyone, and led him to believe that his criminal record would have no effect on his future employment. (Doe Decl. ¶ 4).

Defendant asserts that, even if the Court finds it has jurisdiction to order the expunction of criminal records, there exist no extraordinary circumstances which would justify expunction in this case. Defendant emphasizes that expunction should only be used in extreme cases. The Court finds these circumstances *are* extreme; Doe may

---

3. The only practical purpose for maintaining the record would be for calculating Doe's criminal history category if Plaintiff committed some crime in the future. The Ninth Circuit, however, has held that a conviction which has been "set-

aside" pursuant to the FYCA is deemed expunged for purposes of the Federal Sentencing Guidelines and is not used in calculating the defendant's criminal history category. *United States v. Hidalgo*, 932 F.2d 805 (9th Cir.1991).

lose a good job and be at risk for future prolonged unemployment based on a single criminal conviction which occurred twenty-seven years ago when Doe was a minor, and which has already been vacated.

█ Finally, Defendant argues that 12 U.S.C. § 1829, which prohibits anyone convicted of a crime of dishonesty from working at a federally insured financial institution, provides that the FDIC may waive this requirement.[4] There is no evidence that Doe has sought such a waiver. However, there is also no evidence that the law requires Doe to seek a waiver before requesting expunction or that such a waiver would affect WFS's decision to terminate Doe. It is the company's policy to terminate employees with such records. Just because the FDIC waives the statutory requirement doesn't mean that, as a matter of policy, WFS would not terminate Doe's employment.

## III. CONCLUSION

Despite the absence of an express statutory waiver of sovereign immunity, the Court finds that it has inherent equitable power to order the expunction of criminal records. Moreover, in the instant case, the Court finds that the harm to Doe substantially outweighs any interest that the government might have in maintaining his criminal records, and that extraordinary circumstances exist that warrant expunction. For these reasons, the Court DENIES Defendant's motion to dismiss, DENIES Defendant's motion for summary judgment, and orders the Defendant to show cause why summary judgment should not be granted in favor of Doe. The matter will be heard on Monday, May 5, 1997 at 10:30 a.m. Any additional papers regarding this matter may be filed no later than Thursday, May 1, 1997.

IT IS SO ORDERED.

---

**4.** Specifically, the statute provides that employment is precluded "[e]xcept with the prior writ- ten consent of the Corporation [FDIC]."